UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Key West Division
**Case Number: 16-10044-CIV-MARTINEZ-GOODMAN**

MAXUM INDEMNITY COMPANY, a foreign
corporation,
    Plaintiff,

vs.

3RD GENERATION PLUMBING, INC.,
JAMES MASSARO and
MARIA DEL CARMEN SOLIS, as
Personal Representative of the Estate of Pedro
Jose Sanchez,
    Defendants.
_____/

## ORDER GRANTING PLAINTIFF MAXUM INDEMNITY CO.'S MOTION FOR SUMMARY JUDGMENT [ECF No. 45] AND DENYING DEFENDANT ESTATE OF PEDERO JOSE SANCHEZ'S MOTION FOR SUMMARY JUDGMENT [ECF No. 46]

THIS CAUSE is before the Court on Plaintiff Maxum Indemnity Company ("Maxum")'s Motion for Summary Judgment [ECF Nos. 45] and Defendant Maria Del Carmen Solis, Personal Representative of the Estate of Pedro Jose Sanchez ("the Estate")'s Motion for Summary Judgment [ECF No. 46]. The Court has reviewed the motions, related briefing [ECF Nos. 58, 57, 60, 61], the record, and is otherwise duly advised in the premises. For reasons set forth below, the Court determines that Maxum is entitled to summary judgment in its favor. The Estate's motion is therefore denied.

### I. FACTS AND PROCEDURAL BACKGROUND

#### A. The Accident and State Court Proceedings

At all relevant times, James Massaro ("Massaro") was the president, secretary and sole director of 3rd Generation Plumbing, Inc. ("3rd Generation"), a plumbing contractor with principal place of business in Monroe County, Florida. Maxum issued a commercial general liability policy (Policy No. BDG-0080104-02) that named 3rd Generation as the insured and covered the period from February 21, 2015 through February 21, 2016.

-2-

On May 15, 2015, Pedro Jose Sanchez ("Sanchez"), a laborer for 3rd Generation, was crushed by a backhoe on a job site and died as a result. It is undisputed that 3rd Generation maintained workers' compensation insurance and that its workers' compensation insurance carrier paid benefits to the Estate of Pedro Jose Sanchez. The Estate thereafter filed a wrongful death action in the Sixteenth Judicial Circuit in and for Monroe County against 3rd Generation and James Massaro, contending, in its original pleading, that the Defendants failed to provide and maintain a reasonably safe workplace in conformity with all applicable governmental safety standards and engaged in misconduct which was "substantially and virtually certain to result in injury or death to the decedent." On this premise, the Estate contended the defendants forfeited their ability to invoke workers' compensation immunity under the intentional tort exception of the Florida Workers' Compensation Act set forth at § 440.11(b) (2), Fla. Stat.[1]

After 3rd Generation was dismissed as a defendant from the state court suit, the Estate filed a Second Amended Complaint which named Massaro as sole defendant and dropped the "virtually certain" language previously pled to circumvent workers' compensation immunity. In this pleading, the Estate alleged that Massaro's negligent conduct (including his alleged alteration of equipment to bypass safety features which would have prevented Mr. Sanchez's death)[2] constituted a willful violation of 29 U.S.C. § 666 (e),[3] a provision of the Occupational

---

[1] Under Section 440.11(b) (2), Fla. Stat., the exclusivity provision of the Florida Workers' Compensation Act is subject to exception when "*an employer commits an intentional tort that causes the injury or death of the employee.*" This section defines an "intentional tort" to include conduct undertaken with a deliberate intent to injure (§440.11(b)(1)), or, alternatively, "conduct that the employer knew, based on similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee..."(§440.11(b)(2)).

[2] The Estate generally alleged that Massaro failed to adequately identify worksite hazards and exercise appropriate safety and risk management control; failed to conduct adequate safety inspections of 3rd Generation worksites and equipment, and failed to otherwise maintain 3rd Generation's worksite environment and equipment in conformity with applicable state and federal OSHA safety regulations, including 2 C.F.R. § 1910.147(c) (1).

[3] 29 U.S.C. § 666(e), entitled "Civil and criminal penalties," provides:

(e) **Willful violation causing death to employee.**
Any employer who willfully violates any standard, rule or order promulgated pursuant to [29 U.S.C. § 655] or of any regulations prescribed pursuant to this chapter, and that violation caused death to any employee, shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment for not more than six months, or by

Safety and Health Act (OSHA), applicable only to "employers," which criminalizes willful violations of any OSHA standard that results in the death of an employee. The Estate alleged that Massaro is liable for violating § 666(e) as an "employer," because of the "pervasive and total" control he exerted as a principal in the corporation, *see United States v. Cusack*, 806 F. Supp. 47 (D. N.J. 1992) (officer or director's role in corporation may be so pervasive and total that he is deemed to be the corporation and therefore an "employer" subject to criminal liability for OSHA violations). Consequently, the Estate alleged that Massaro forfeited the protections of workers' compensation immunity by failing to avoid the commission of criminal law violations in the course of his managerial and policy-making duties undertaken on behalf of the corporation pursuant to § 440.11(1) (b) (2), Fla. Stat. [ECF No. 44-3, ¶15]. This exception to the Florida Workers' Compensation Act's exclusivity provision provides in relevant part:

> The same immunity provisions enjoyed by an employer shall also apply to any sole proprietor, partner, corporate officer or director, supervisor, or other person who in the course and scope of his or her duties acts in a managerial or policymaking capacity and the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and was not a violation of law, whether or not a violation was charged, for which the maximum penalty which may be imposed does not exceed 60 days' imprisonment as set forth in s. 775.082.

§ 440.11(1) (b) (2), Fla. Stat. Put another way, the Estate claimed that Massaro, acting in the course and scope of his managerial and policy-making duties as an executive officer of 3d Generation, became criminally liable for the commission of OSHA violations resulting in Mr. Sanchez's death and thereby forfeited workers' compensation immunity under operation of §440.11(1)(b)(2).

### B. The Federal Declaratory Judgment Action

Maxum assumed the defense of 3rd Generation and Massaro in the underlying tort action under a reservation of rights [ECF No. 1, ¶ 19], and then proceeded to file this declaratory judgment action to determine whether it is obligated to defend and indemnify Massaro and 3rd

---

both; except that if the conviction is for a violation committed after a first conviction of such person, punishment shall be by a fine of not more than $20,000 or by imprisonment for not more than one year, or by both.

Generation in that proceeding. Maxum's initial complaint identifies various exclusions, definitions and conditions which it contends preclude coverage under the Policy for the claims asserted against Massaro in the underlying state court action.[4]

The relevant exclusions invoked in Maxum's instant motion for summary judgment are the Employer's Liability Exclusion and the Workers' Compensation Law Exclusion. Under the Employer's Liability Exclusion, the insurer is generally not liable for injuries that occur to employees while they are performing duties related to the insured's business. Under the Workers Compensation Law Exclusion, coverage does not extend to "any obligation of the insured under a workers' compensation … law or similar law."

### C. The CGL Policy

Maxum issued a policy extending commercial general liability coverage to 3rd Generation subject to certain terms, conditions, limitations, definitions, and exclusions ("the Policy"). The Policy provides limits of $1,000,000 per occurrence, subject to a $2500 per claim deductible for bodily injury. The relevant policy sections implicated in this summary judgment proceeding are found at Section I, Coverage A, "Bodily Injury and Property Damage Liability," Section II, "Who is an Insured," and Section IV, "Commercial General Liability Conditions."

### 1. Insuring Agreement

Coverage A of the Policy sets forth the essential "Insuring Agreement" between the parties, and recites Maxum's undertaking "to pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." [Section I, Coverage A, ¶ 1.a] [ECF 44-6 p. 17]. The insurance applies to

---

[4] On July 20, 2017, Maxum amended its complaint for declaratory relief to add a count for the insured's alleged breach of the Policy's "cooperation clause" as a further bar to coverage on the Estate's claim. [Third Amended Complaint] [ECF No. 66]. In this pleading, Maxum alleges the Estate and Massaro entered into a $3.75 million consent judgment in June 2017, without the knowledge and over the objection of Maxum [ECF Nos. 49, 66], notwithstanding Maxum ongoing defense of Massaro in the underlying state court suit pending the outcome of this declaratory judgment proceeding [ECF 57, p. 4]. Upon agreed motion of the Maxum and the Estate, this Court stayed proceedings on the consent judgment aspect of this declaratory judgment suit pending resolution of the parties' cross-motions for summary judgment [ECF 65].

-4-

"bodily injury" and "property damage" only if it is caused by an "occurrence"[5] that takes place in the defined coverage territory and during the policy period. [Section I, Coverage A, ¶ 1.b.]. By this agreement, Maxum further undertook "the right and duty to defend the insured against any 'suit' seeking those damages," but assumed "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." [Section I, Coverage A, ¶ 1.a].

### 2. Who is an Insured

At Section II (Who Is An Insured"), the Policy defines who is eligible to claim the coverages extended under the Policy. Section II, ¶ 1, recites that the person or entity designated in the Declarations is an insured, in addition to certain categories of individuals associated with the operation of the named insured's particular form of business organization.

As relevant here, the Policy provides at Section II, ¶1.d:

1. If you are designated in the Declarations as:

    ....

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

Section II, ¶ 2 sets forth categories of additional insureds, and provides in material part:

2. Each of the following is also an insured:

    a. ....[Y]our "employees," other than either your 'executive officers"[6] (if you are an organization other than a partnership joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" ....... are insureds for:

---

[5] At Section V, ¶ 13 of the Policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general and harmful conditions."

[6] At Section V, ¶ 6, the Policy defines an "executive officer" as "a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document."

-5-

(1) "Bodily injury" or "personal and advertising injury":
(a) To you.... or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business;

### 3. Exclusions

Section I, Coverage A, Paragraph 2, of the Policy states in relevant part:

2. Exclusions

This insurance does not apply to:

....

d. Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. Employer's Liability

"Bodily injury" to:
(1) An "employee"[7] of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties related to the conduct of the insured's business;...
....
This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

### 4. Conditions

Section IV ("Commercial General Liability Conditions"), ¶ 7 of the Policy recites:

Separation of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

---

[7] The Policy does not affirmatively define an "employee," but at Section V, ¶ 5 (Definitions), the Policy gives examples of what is and is not included in this term, stating: "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

-6-

  a. As if each Named Insured were the only Named insured; and

  b. Separately to each insured against whom claim is made or "suit" is brought.

## II. Standard of Review and Legal Framework

### A. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions and affidavits show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under controlling substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

In ruling on a motion for summary judgment, the district court is obligated to view the evidence and all factual inferences drawn from it in the light most favorable to the non-moving party and to determine whether that evidence could reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646; *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).

### B. Choice of Law

In exercising its diversity jurisdiction, the district court is obligated to follow the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941). Under Florida law, the place where a contract was made governs its interpretation. *State Farm Mutual Auto Ins. Co. v. Roach*, 945 So.2d 1160, 1163 (Fla. 2006). In this case, it is undisputed that the Maxum policy was issued and delivered to 3rd Generation in Florida. Accordingly, Florida law controls the interpretation of the Policy.

### C. Insurance Contract Rules of Construction

Under Florida law, an insurer has a duty to defend a lawsuit against its insured if the allegations of the underlying complaint set forth at least one claim falling with the policy

-7-

coverages. *National Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So.2d 533, 536 (Fla. 1977); *Baron Oil Co. v. Nationwide Mutual Fire Ins. Co.*, 470 So.2d 810, 813-14 (Fla. 1st DCA 1985). This determination is based on the four corners of the operative complaint. *Higgins v State Farm Fire and Cas. Co.*, 894 So.2d 5, 9-10 (Fla. 2004); *Maryland Cas. Co. v. Florida Atlantic Orthopedics, P.L.*, 771 F. Supp. 2d 1328, 1332 (S.D. Fla. 2011), *aff'd*, 469 Fed. Appx. 722 (11th Cir. 2012); *ABC Distributing, Inc. v. Lumbermens Mutual Ins. Co.*, 646 F.2d 207, 208 (5th Cir. 1981). If the alleged facts of the complaint fairly and potentially bring the suit within coverage, the insurer has a duty to defend. *Florida Atlantic*, 771 F. Supp. 2d at 1332. On the other hand, if the allegations of the complaint demonstrate the clear applicability of a policy exclusion, there is no duty to defend. *Id.* If this examination leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured. *Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580-81 (11th Cir. 1995). *See generally LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997) (duty to defend is broader than duty to indemnify and burden is on insured to prove a claim is covered by the policy).

The interpretation of an insurance contract is a question of law for the court, *Kattoum v. N.H. Indem. Co.*, 968 So.2d 602, 604 (Fla. 2d DCA 2007); *Amerisure Ins. Co. v. Gold Coast Marine Distribution, Inc.*, 771 So.2d 579, 582 (Fla. 4th DCA 2000), and for this reason, insurance disputes are generally well-suited for summary judgment disposition. *Genesis Ins. Co. v. City of Council Bluffs*, 677 F.3d 806, 811 (8th Cir. 2012); *National Specialty Ins. Co. v. ABS Freight Transp., Inc.*, 91 F. Supp. 3d 1258, 1260 (S.D. Fla. 2014), aff'd sub nom, *National Specialty Ins. Co. v. Martin-Vegue*, 644 Fed Appx. 900 (11th Cir. 2016).

Like all contracts, insurance contracts are properly construed in accordance with the plain language of the contract as bargained for by the parties. *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000). Where language in a policy is plain and unambiguous, no special construction or interpretation is required, and the plain language should be given the meaning which it clearly expresses. *Jefferson Ins. Co. of N.Y. v. Sea World of Fla., Inc.*, 586 So.2d 95, 97

(Fla. 5th DCA 1991); *U. S. Liability Ins. Co. v. Bove*, 347 So.2d 678, 680 (Fla. 3d DCA 1077). Conversely, if the relevant policy language is susceptible to more than one reasonable interpretation, one allowing coverage and one limiting coverage, the policy is deemed ambiguous, and resort to secondary rules of construction obtains. *Washington Nat. Ins. Corp. v. Ruderman,* 117 So.3d 943 (Fla. 2013). If all available construction tools, including extrinsic evidence, fail to resolve the ambiguity, the policy should be should be construed against the drafter, under theory that the drafter should suffer the consequence of having chosen the language which created the ambiguity in the first instance. *Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1247-48 (11th Cir. 2002); *DSL Internet Corp. v. TigerDirect, Inc.*, 907 So.2d 1203, 1206 (Fla. 3d DCA 2005); *Saha v. Aetna Cas. & Surety Co.*, 427 So.2d 316, 317 (Fla. 5th DCA 1983).

In rendering its ultimate construction, the court should read the policy as a whole, endeavoring to give every provision its full meaning and operative effect and to reconcile any apparent inconsistencies if possible. *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29 (Fla. 2000); *Westport Ins. Corp. v. VN Hotel Group, LLC,* 761 F. Supp. 2d 1337 (M.D. Fla. 2010)., quoting *Fla. Farm Bureau Ins. Co. v. Birge*, 659 So.2d 310, 312 (Fla. 2d DCA 1994).

### III.     DISCUSSION

#### A.     Workers' Compensation Law Exclusion

The underlying state court complaint alleges that Massaro acted, relative to the misconduct alleged, in the course and scope of his employment as executive officer and sole director of 3rd Generation, and that he is liable in tort to the Estate for criminal violations committed in the exercise of his managerial and policy-making duties on behalf of the corporation. These allegations bring Massaro within the definition of an "insured" as set forth at Section II, ¶1.d. of the Policy, which, in addition to a designated or named insured consisting of an organization "other than a partnership, joint venture or limited liability company," subsumes the following categories of individuals: "Your 'executive officers' and directors are

insureds, but only with respect to their duties as your officers or directors." Maxum acknowledges that Massaro qualifies as an insured under this provision and that that Maxum has a duty to defend him in the underlying lawsuit unless liability coverage for Sanchez's death is excluded under the CGL Policy.

As noted, 3rd Generation's CGL Policy excludes from bodily injury and property damage liability coverage payable under "Coverage A," "any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." (Policy, Part A, 2.d.). From here, the central question presented is whether the "Workers' Compensation and Similar Laws" exclusion of the Policy applies to Massaro, as "the insured," within the meaning of this clause, on rationale that his tort liability in the underlying wrongful death claim constitutes an "obligation" of Massaro under a workers compensation law.

The Estate argues that Maxum cannot avoid coverage of the wrongful death claim through the Policy's Workers' Compensation Law exclusion because its tort claim is tantamount to a duty to pay imposed by tort law, not an "obligation …under a workers compensation law." Maxum, in turn, contends that Massaro's liability in the wrongful death case exists purely due to operation of § 440(1)(b)(2) of the Florida Workers Compensation Law, and that his "obligation" to the Estate is therefore one "under" a workers' compensation law for purposes of triggering the exclusion.

Although neither Florida nor the Eleventh Circuit has addressed the interpretation of this specific exclusion as applied to a corporate officer of an insured corporation, the interpretation advanced by Maxum is fully consistent with Florida case law interpreting and applying this exclusion to employer-insureds, and is adopted here as a natural and logical outgrowth of that precedent. In *Indian Harbor Ins. Co. v. Williams*, 998 So.2d 677 (Fla. 4th DCA 2009), cited with approval in *Morales v. Zenith Ins. Co.*, 152 So.3d 557 (Fla. 2014) (workers' compensation law exclusion in employer's liability policy excluded coverage of judgment entered against employer in wrongful death suit), the Fourth District addressed whether an

employer, who was insured under a commercial general liability policy, "was entitled to coverage for negligence claims brought against him by his employees ... for injuries they sustained within the course and scope of their employment." Despite the employer's violation of its statutory duty to maintain workers' compensation insurance, the Fourth District applied the policy's workers' compensation law exclusion (in addition to a co- employee exclusion) to hold that the employer was not entitled to coverage. *Id.* at 679.

In reaching this result, the Fourth District embraced the rationale underpinning *Florida Insurance Guar. Ass'n v. Revoredo*, 698 So.2d 890 (Fla. 3d DCA 1997), where the Third District similarly held that a workers' compensation law exclusion and a separate exclusion (for co-employee bodily injury) barred coverage of an employee's negligence claim against an employer which had failed to secure workers' compensation insurance. As to the workers' compensation exclusion, the Third District reasoned that because "[t]he 'employer's liability' is pursuant to section 440.11(1) of the Workers' Compensation Law [deriving from a statutory exception to tort immunity], the employer's "obligation to [the employee] is one 'under a workers' compensation ... law." *Id.* at 893.

Like the negligence-based claims in *Indian Harbor* and *Revoredo*, this Court concludes that Massaro's tort liability to the Estate is a creature of the Florida Workers' Compensation Law, and therefore constitutes an "obligation" of Massaro to an employee "under a workers' compensation ...law." That the insured in this case is a corporate officer, as opposed to an employer, does not compel a different result. *See Oppenheim v. Reliance Ins. Co.*, 804 F. Supp. 305 (M.D. Fla. 1991) (applying workers' compensation exclusion to employer's president who was not entitled to workers' compensation immunity because of gross negligence); *Hanover Ins. Co. v Jones*, 979 F. Supp. 2d 1210 (Kan. 2013) (same). The Court agrees with the reasoning in *Oppenheim*. A CGL Policy is designed to protect the insured from liability for injuries to the public and is not designed to protect it from lawsuits for bodily injuries to its own employees. Because Mr. Sanchez's death was covered by the Florida Workers Compensation Act, and the

tort liability of Massaro exists under a statutory exception to immunity under the Florida Workers' Compensation Act, the tort claim of the Estate is plainly an "obligation" of "the insured" "under a workers compensation …law" for purposes of triggering this exclusion.

Advancing a contrary result, the Estate argues, unlike *Indian Harbor* or *Revolerdo*, that this case does not involve a tort claim against an employer charged with a statutory duty to obtain workers' compensation insurance; instead, it notes Massaro is a corporate executive who is not personally charged with an obligation to maintain such insurance, such that the underlying tort claim against him is not properly viewed as an "obligation" attaching to him "under" a workers' compensation law. It contends this interpretation is driven by the Policy's "separation of insureds" clause, which states that Coverage A applies, "as if each named insured were the only named insured" and "separately to each insured against whom claim is made or "suit is brought."

In support of this proposition, it relies primarily upon *Tri-S Corp. v. Western World Ins. Co.*, 135 P.3d 82, 110 Hawai'i 473 (2006). Interpreting similar policy language, the Hawaiian Supreme Court in *Tri-S* concluded, as a threshold matter, that an executive officer of the insured corporation qualified as an insured by definition of the Policy, which – like the Maxum Policy – provided that executive officers of the named insured are insureds, but only with respect to their duties as corporate officers. It next addressed the two policy exclusions invoked as a coverage bar to the claim against the executive officer-insured. As relevant here, it addressed the workers' compensation exclusion, which excluded coverage for "[a]ny obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or similar law."

The claimant in *Tri-S* contended that the named insured corporation – not its corporate officer – was the only entity charged with an "obligation" under a workers' compensation law to provide workers' compensation insurance, and that the exclusion therefore had no application to the officer-insured. The Hawaiian Supreme Court agreed. It held, first, that the phrase "the insured," in the context of this exclusion, must be read to mean the party seeking coverage as

opposed to the named insured (i.e. corporation-employer), or "any insured," in analyzing whether the workers' compensation exclusion applies. Therefore, it found the phrase "obligation of the insured" properly read to mean an "obligation of [the officer]." [8] Because the officer-insured was not an "employer" charged with a duty to provide workers' compensation insurance under Hawai'i's workers compensation law, the court found the exclusion inapplicable to him. *Id.* at 492-493. [9]

Although this Court agrees that the phrase "obligation of the insured" in the context of the instant policy exclusion may properly be read to mean an "obligation of Massaro" as an officer-insured by definition, it respectfully disagrees with the remainder of the *Tri –S* court's analysis on this issue, finding it inconsistent with the plain language of the exclusion and Florida case law precedent holding that an "obligation" of an employer-insured in this context includes a tort obligation based on a statutory exception to workers' compensation immunity. *See Indian Harbor, Revoredo, supra.*

Drawing from these authorities, the Policy's Workers' Compensation Law exclusion in this case is logically interpreted to subsume tort obligations chargeable to a corporate officer-insured which exist as a creature of a statutory exception to tort immunity under Florida's Workers' Compensation Act. Massaro's tort liability to the Estate is a product of alleged criminal law violations committed in the discharge of his managerial and policy-making duties on behalf of 3rd Generation. The instant claim, hinging on such violations, necessarily derives from an "obligation" of Massaro under the Florida statute. Hence, the Policy's Workers Compensation Law exclusion plainly applies to the underlying tort claim, and Massaro is not covered under the Maxum Policy for this claim as a matter of law.

---

[8] It buttressed this conclusion under application of the policy's "severability-of-interests" (separation of insureds) clause, which it found required the phrase "the insured" in the workers' compensation law exclusion to refer to the insured seeking coverage, as opposed to the named insured.

[9] The Tri-S court also rejected the insurer's invocation of a separate, co-employee exclusion, finding that the officer-insured effectively functioned as an additional insured to whom the co-employee exclusion does not apply.

### III. CONCLUSION

Based on the foregoing, the Court concludes that Maxum has no obligation to defend or indemnify Massaro in the underlying tort action under operation of the Policy's Workers' Compensation Exclusion as a matter of law. Because this determination resolves the dispute, the Court need not address whether the Employer's Liability Exclusion also applies.

It is accordingly **ORDERED AND ADJUDGED**:

1. Plaintiff Maxum Indemnity Company's motion for summary judgment [ECF No. 45] is **GRANTED**.

2. The Defendant Estate's cross-motion for summary judgment [ECF No. 46] is **DENIED.**

3. Pursuant to Rule 58, final summary judgment in favor of Plaintiff and against Defendant shall enter by separate order of the Court.

4. The Clerk of Court is directed to **CLOSE** this case and terminate all pending motions as **MOOT.**

DONE AND ORDERED in Chambers at Miami, Florida, this 6 day of July, 2018.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Goodman
All Counsel of Record